**Case No. 2:24-cv-04143-WB**

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____

## IN THE MATTER OF:

## IN RE: TH PROPERTIES, ET AL.
_____

## APPEAL OF REORGANIZED DEBTORS FROM ORDER OF JULY 29, 2024 ENTERED IN BANKRUPTCY NO. 09-13201 (AMC) IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____

## OPENING BRIEF OF APPELLANTS AND
## APPENDIX VOLUME I

---

**BIELLI & KLAUDER, LLC**

Thomas D. Bielli, Esquire
Angela L. Mastrangelo, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Phone: (215) 642-8271
tbielli@bk-legal.com
mastrangelo@bk-legal.com

*Attorneys for Appellants*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rules of Bankruptcy Procedure 8012 and 8014(a)(1), Appellant TH Properties, L.P. ("THP"), along with other debtor entities (collectively, the "Reorganized Debtors")[1], hereby certify that they are Limited Partnerships and a Limited Liability Company and that there are no corporations (other than the Debtors) that directly or indirectly own ten percent (10%) or more of any of the Reorganized Debtors' equity interests.

---

[1] The Reorganized Debtors are Morgan Hill Drive, LP, Northgate Development Company, LP, TH Properties, TH Properties of New Jersey, L.P., TH Properties, Inc., TH Properties, LLC, and Wynstone Development Group, LP (the "Reorganized Debtors").

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF
REVIEW AS TO EACH: ...................................................................................1

STATEMENT OF THE CASE ...........................................................................2

    A.    The Bankruptcy Case ....................................................................2

    B.    Fees Awarded And Paid During The Bankruptcy Case............................2

    C.    Stipulation To Resolve Objections to Final Fee Application and to Pay
        Fees .............................................................................................3

    D.    Appellant's Motion to Reopen the Bankruptcy Case .................................5

    E.    MMWR's Appeals and Subsequent Trial in the Bankruptcy Court ..........7

SUMMARY OF ARGUMENT.............................................................................9

ARGUMENT ....................................................................................................10

    A.    THE STANDARD OF APPELLATE REVIEW. .....................................10

    B.    THE BANKRUPTCY COURT IMPROPERLY DETERMINED THAT
        MMWR'S INTERPRETATION OF THE STIPULATION IS CORRECT.
        ........................................................................................................10

    C.    THE BANKRUPTCY COURT ERRORED BY AMENDING ITS
        ORDER TO AWARD MMWR 6% INTEREST AND NOT EXCLUDE
        THE TRIAL DELAY PERIOD .............................................................20

CONCLUSION .................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972 (3d Cir. 1984)........20

*Bd. of Commr's of Jackson County, Kansas v. U.S.*, 308 U.S. 343 .......................20

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995)......12

*In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2003) ....................................................2

*In re TransWorld Airlines, Inc*., 145 F.3d 124 (3d Cir. 1998) ............................1, 10

## STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW AS TO EACH:

ISSUE 1: Did the Bankruptcy Court error in determining MMWR's interpretation of the Stipulation is correct?

SUGGESTED ANSWER: Yes.

STANDARD OF REVIEW: In an appeal from a Bankruptcy Court decision, the District Court, sitting as an appellate court, "reviews a bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re TransWorld Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). Here, the Bankruptcy Court's factual findings should be reviewed for clear error and abuse of discretion.

ISSUE 2: Did the Bankruptcy Court error in amending its Order to award MMWR 6% interest and not exclude the trial delay period?

SUGGESTED ANSWER: Yes.

STANDARD OF REVIEW: In an appeal from a Bankruptcy Court decision, the District Court, sitting as an appellate court, "reviews a bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re TransWorld Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998). Here, the Bankruptcy Court's factual findings should be reviewed for clear error and abuse of discretion.

## STATEMENT OF THE CASE

### A.    The Bankruptcy Case

TH Properties, L.P. ("THP"), along with other debtor entities, the Reorganized Debtors, filed their voluntary chapter 11 cases on April 9, 2009 (the "Petition Date"). APPX000065. Montgomery McCracken Walker & Rhoads, LLP ("MMWR") was employed as the Reorganized Debtors' counsel. To be employed as a matter of law (*see In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2003)), MMWR agreed to waive any pre-petition claim it may have had against the Reorganized Debtors as of the Petition Date.

During the Reorganized Debtors' bankruptcy cases, the Reorganized Debtors submitted several plans of reorganization. Ultimately, MMWR was successful in having the Third Amended Joint Chapter 11 Plan approved. APPX000704-806. The Bankruptcy Court confirmed the Third Amended Plan, which provided in relevant part that MMWR would be paid as agreed upon by the Reorganized Debtors, MMWR, and the committee. APPX000831.

### B.    Fees Awarded And Paid During The Bankruptcy Case

While retained as the Reorganized Debtors' bankruptcy counsel, MMWR filed nine (9) fee applications spanning the period April 30, 2009 through April 30, 2012. APPX000415-418. For the first nine (9) applications, a total of $2,918,148 in fees and $189,331.18 in costs had been approved by the Bankruptcy Court, for a

total of $3,107,497.18.  However, as of August 9, 2012, the Reorganized Debtors had paid $680,789.68 to MMWR for legal fees and costs for pre-petition, petition, and post-petition work.  APPX000647.

On August 9, 2012, MMWR filed its tenth and final fee application for services performed on the Reorganized Debtors' behalf during the bankruptcy. APPX000412-421.  This final fee application sought payment not only of the balance of fees and costs not paid, but also an additional $38,239.50 in fees and $2,493.04 in costs for work performed in May of 2012.  APPX000421.

The Reorganized Debtors and other parties to the case objected to MMWR's tenth and final fee application. The Reorganized Debtors argued that MMWR failed to adequately and efficiently handle the case.  APPX000472-000478.

C.    **Stipulation To Resolve Objections to MMWR's Final Fee Application and to Pay Fees**

To resolve the objections regarding the amount of MMWR's tenth and final fee application and to determine how fees would be paid overall, MMWR, the Reorganized Debtors, and other parties worked together to negotiate an agreement regarding the amount of and how MMWR's claims would be paid.

Ultimately, the parties, including MMWR, entered into a stipulation in January 2013 to resolve the fee objections and other disputes (the "Stipulation"). APPX000530-000540.  Paragraph 1 of the Stipulation reads as follows:

> MMWR will agree to reduce its total fee and costs claims against THP [i.e., the reorganized Debtors] from $2.6 million for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP to the total sum of $2.325 million, with the said reduction of $275,000 to be applied after receipt by MMWR of $2.325 million, thereby leaving unchanged the present agreed on base number of $2,537,683.40 for MMWR for purposes of calculating the proportional allocation of any future distributions to MMWR and other Plan creditors. And the said objections are hereby resolved and withdrawn with prejudice.

APPX000530-531. The Stipulation further provided that, as the Reorganized Debtors' real estate units were sold, each sale would generate funds to pay down MMWR's fees "until MMWR receives its full payment of $2.325 million." APPX000532-533 (¶¶ 5-6). The Stipulation was approved by the Bankruptcy Court on January 18, 2013. APPX000539.

The Reorganized Debtors then paid MMWR in accordance with the Stipulation until MMWR received its full payment of $2,325,000 for pre-petition, petition, and post-petition fees, the total agreed upon amount in the Stipulation, satisfying all amounts owed to MMWR. On February 29, 2016, David M. Klauder, counsel to the Reorganized Debtors, issued a letter to MMWR enclosing the final payment towards the $2,325,000 and accounting for the payments made to MMWR. APPX000646-651. That accounting included the $680,789.68 paid to MMWR prior to the parties executing the Stipulation pursuant to its initial nine (9) fee applications. As the Reorganized Debtors paid MMWR a total of $2.325 million, MMWR's claim

4

was automatically reduced from $2.6 million to $2.325 million in accordance with the Stipulation.  APPX000646.

### D.    Appellant's Motion to Reopen the Bankruptcy Case

On June 9, 2016, MMWR filed a Motion to Reopen the bankruptcy case and enforce the Stipulation, and to impose sanctions.  APPX000541.  As an exhibit to the Motion to Reopen, MMWR filed a Motion to Enforce the January 18, 2013 Stipulation and Order to Impose Sanctions.  APPX000559.  The Motion to Enforce was not separately filed on the Bankruptcy Court's docket.

MMWR's argument was that the Stipulation was ambiguous in that it required the Reorganized Debtors to pay more than the amount of MMWR's claim for pre-petition, petition, and post-petition fees. Specifically, MMWR argued that the sum of $2.325 million was an additional amount meant to be paid to it following execution of the Stipulation; indeed, the word "***additional***" (emphasis in the original) appears approximately forty times in MMWR's Motion to Enforce the January 18, 2013 Stipulation and Order to Impose Sanctions.  APPX000559-573.  Notably, nowhere does the word "additional" appear in the Stipulation.  APPX000530-540.

Appended to MMWR's Motion to Enforce was an Affidavit of Leonard A. Busby in support thereof, wherein he stated, *inter alia*, that his subjective intent was that MMWR would be paid a different amount than $2.325 million to resolve all pre-petition, petition, and post-petition claims (*i.e.*, MMWR would be paid $2.325

million in addition to the $680,789.68 it had been previously paid).  APPX000672-610.

On July 13, 2016, the Court held a hearing on the Motions MMWR filed on June 9, 2016.  At that hearing, Mr. Busby, on MMWR's behalf, stated that "in my view, the parties intended for the payment of additional funds or [*sic*] 2.325 million." APPX000691 (ll 3-4).  The Court, however, stated,

> [The Stipulation] is absolutely clear. There is no ambiguity in that paragraph. It says: "Total fees and costs for all pre-bankruptcy, bankruptcy, and post-bankruptcy work." It doesn't say anything about credits or retainers or other payments. It says "Total fees and costs." . . . There isn't anything remotely ambiguous about that.

APPX000687-688 (l. 25 – l. 14).  Stating also that the Stipulation's provision "could not be more clear" and that MMWR's "position was absurd" (APPX000689 (ll. 2-3)), the Court held,

> The case is reopened for the purposes of interpreting that provision [in the Stipulation]. I interpret the provision – that the provision – as the opponents, objectors do. I don't think that it calls for additional compensation over and above the recited figure, which describes itself quite clearly as being the total fee and cost claims for all pre-bankruptcy, bankruptcy, and post-bankruptcy work.  The position of the movant is inconsistent with the plain language of that contractual provision, so that constitutes the Court's ruling, with respect to the interpretive issue and an order to that effect will be entered and the case will be immediately closed.

APPX000693-694 (l. 22 – l. 9).

**E.    MMWR's Appeals and Subsequent Trial in the Bankruptcy Court**

On July 26, 2016, MMWR filed a Notice of Appeal to the District Court. APPX000696.  On March 24, 2017, the District Court affirmed the Bankruptcy Court's July 13, 2016 Order. APPX000272.

MMWR filed an Appeal of the March 24, 2017 District Court Order, and on November 28, 2019, the U.S. Court of Appeals for the Third Circuit remanded the matter back to the Bankruptcy Court having made the determination the Stipulation was ambiguous, and the word "claims" was susceptible to multiple meanings. APPX000272.

On January 10, 2020, a two (2) day trial was scheduled for April 28, 2020, during the COVID-19 pandemic. APPX000274.

On July 30, 2020, the bankruptcy case was transferred to Chief Judge Magdeline D. Coleman, as Judge Jean K. FitzSimon had retired. APPX000274.

On November 8, 2023, a two (2) day trial was scheduled for March 4, 2024 and March 5, 2024. APPX000275.  The two (2) day trial was conducted on March 4, 2024 and March 5, 2024, and Judge Coleman took the matter under advisement. APPX000276.

After the unsolicited request of MMWR and its Motion for Leave to file post-trial brief, Judge Coleman permitted the parties to submit post-trial briefs over the Reorganized Debtors' opposition.  Pursuant to the Bankruptcy Court's Order dated

April 10, 2024, MMWR and the Reorganized Debtors each filed Post-Hearing Briefs. APPX001352-1376.

On July 29, 2024, the Bankruptcy Court entered an Order granting MMWR's Motion to Enforce APPX000056-57 and entered an accompanying twenty-four page Decision APPX000032-55.

On August 9, 2024, the Reorganized Debtors filed a Notice of Appeal to this District Court. APPX000001. On that same day, MMWR filed its Motion for Reconsideration of the Bankruptcy Court's July 29, 2024 Order and Decision, which requested the Bankruptcy Court to amend its Order regarding the calculation of interest awarded to MMWR. APPX000278.

On August 12, 2024, the Bankruptcy Court entered a Notice of Docketing Record on Appeal to District Court. APPX000278.

On August 23, 2024, the Reorganized Debtors filed their Objection to MMWR's Motion for Reconsideration. APPX001401-1410.

On October 10, 2024, the Bankruptcy Court entered its Order granting MMWR's Motion for Reconsideration. APPX000280.

This is the Reorganized Debtor's Opening Brief in the appeal of the Bankruptcy Court's July 29, 2024 Order and Decision, as amended by the Bankruptcy Court's October 10, 2024 Order granting MMWR's Motion for Reconsideration.

## SUMMARY OF ARGUMENT

The Bankruptcy Court errored in determining that MMWR's interpretation of the Stipulation is correct. The language of the Stipulation, which MMWR negotiated, drafted, and to which it agreed, is clear. Despite examining extrinsic evidence, as required when the case was remanded, the language of the Stipulation and the parties' efforts in drafting it, support a finding in favor of the Reorganized Debtors' interpretation.

MMWR hangs its argument upon a mechanism for how it would receive payment. During negotiations leading up to the Stipulation's drafting and execution, the Reorganized Debtors' counsel provided a formula showing how MMWR would be paid, over time, from the sales of the Reorganized Debtors' real estate units up to $2.325 million. Ultimately, the parties agreed that MMWR would resolve its pre-petition, petition, and post-petition claims for $2.325 million, and MMWR was paid that sum, in full, in accordance with the formula for sales-based payments.

Only after it was paid in full for all claims, did MMWR argue that the $2.325 million provided in the Stipulation was *in addition to* amounts received by MMWR in the Bankruptcy Case prior to the parties executing the Stipulation.

Enforcing the Stipulation as MMWR contends would lead to an unintended result: MMWR would be paid far more than it agreed it would be paid by the Reorganized Debtors.

**ARGUMENT**

**A.    THE STANDARD OF APPELLATE REVIEW.**

In an appeal from a Bankruptcy Court decision, the District Court, sitting as an appellate court, "reviews a bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re TransWorld Airlines, Inc*., 145 F.3d 124, 131 (3d Cir. 1998).

MMWR argues that the Stipulation contains a latent ambiguity and that the extrinsic evidence supports its interpretation. The District Court should review the Bankruptcy Court's findings for clear error and abuse of discretion.

**B.    THE BANKRUPTCY COURT IMPROPERLY DETERMINED THAT MMWR'S INTERPRETATION OF THE STIPULATION IS CORRECT.**

"Under Pennsylvania law, ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 n.10 (3d Cir. 1980).

MMWR argues that the attachments to the Stipulation show that an "additional" $2.325 million was to be paid to it.  Unfortunately for MMWR, this argument is contradicted by the Stipulation's plain language.  The key points to which MMWR agreed are:

- Stipulation, ¶ 1 (APPX000532) (emphasis added):

> MMWR will agree to reduce its total fee and costs claims against THP [i.e., the reorganized Debtors] ___from___ $2.6 million for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP ___to___ the ___total___ sum of $2.325 million, with the said reduction of $275,000 to be applied after receipt by MMWR of $2.325 million, thereby leaving unchanged the present agreed on base number . . .

- Stipulation, ¶ 5 (APPX000532-533) (emphasis added): ". . . MMWR is hereby guaranteed by TH in any event a minimum of $10,000 payable at closing for the sale of every unit in the Village at Wynstone until MMWR receives its ___full payment___ of $2.325 million."

- Stipulation, ¶ 6 (APPX000533) (emphasis added): ". . . MMWR is hereby guaranteed by TH in any event a minimum of $50,000 payable at closing for the sale for each unit sold at Burton Ridge until MMWR receives its ___full payment___ of $2.325 million."

There are at least three separate instances in the Stipulation where the parties agreed that MMWR would "receive[] its ___full payment___ of $2.325 million." And paragraph 1 of the Stipulation further clarifies that the $2.325 million is the "total fee and costs claims against THP from $2.6 million for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP to the total sum of $2.325 million." The key words and phrases are many: MMWR agrees to reduce its "total fee and costs claims"; it reduces "from $2.6 million . . . to the total sum of $2.325 million . . ."; it reduces the claims "for all pre-bankruptcy, bankruptcy, and post-bankruptcy work . . ."; and it received "its full payment of $2.325 million."

MMWR offered extrinsic evidence of the parties' "intent" to pay "additional" funds when drafting the Stipulation. However, a party's subjective intent is not

11

evidence of contractual ambiguity. MMWR's "understanding" is not sufficient to re-interpret plainly drafted key provisions of the Stipulation. "Extrinsic evidence to show ambiguity in a contract can only be evidence that addresses the meaning of a specific term in the contract, and not the subjective intent of the parties." *Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 520 (E.D. Pa. 2010) (finding that the term "solicit" in a non-solicitation agreement was not ambiguous and consequently disallowing extrinsic evidence to define the term). Indeed, the parties' subjective intent is an area into which courts should not delve. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (a purchaser's warranty claim failed where the purchaser believed that the product would last for forty years, but could point to no explicit language in any agreement of sale that expressed a guarantee or warranty; the purchaser's subjective intent was not probative of ambiguity).

The evidence MMWR presented was evidence of the parties' subjective intent in drafting the Stipulation. APPX000676-695. But no Court should have to determine the parties' subjective intent at the time the Stipulation was drafted. Intent is not a basis for contractual ambiguity when the language speaks for itself, and the language of the Stipulation is, as Judge Raslavich said, absolutely clear" and "100 percent clear." APPX000687 (l. 25), 689 (ll. 18-22). Evidence of MMWR's subjective intent should have been excluded by the Bankruptcy Court.

12

Furthermore, the evidence presented at the Bankruptcy Court trial does not support MMWR's interpretation of the Stipulation.   Mr. Busby, counsel and a witness for MMWR, testified regarding a change made to the Stipulation during the parties' negotiations:

> THE COURT: And look at paragraph 1.
>
> THE WITNESS: Those are the only two things I have in front of me, Your Honor.
>
> THE COURT: Okay. Now tell me. Okay. It says, MMR will agree to reduce its total fees and cost claims against - - that isn't in there. It just says MMR will agree to reduce its total fee and cost claim.
>
> THE WITNESS: Okay, so I can answer, Your Honor. Okay, so the first change between paragraph number 7 and paragraph number 1 of the stipulation is the word claim is made plural.
>
> THE COURT: Okay. All right.
>
> THE WITNESS: And then it continues. And after the words 2.6 million, there's an insert. And the insert is for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP to the total sum of.
>
> THE COURT: Okay.

APPX001047 (Tr. 51:9-25).  The change from "claim" to "claims" supports THP's position that the Stipulation not only resolved MMWR's Tenth Fee Application, but also all remaining issues in the bankruptcy plan confirmation.  Correspondingly, the phrase "for all pre-bankruptcy, bankruptcy, and post-bankruptcy work for THP to the total sum of" was added.  This shows that the use of "claims" in the Stipulation

encompasses the entire universe of work done by MMWR related to THP, not just

the amount set forth in the Tenth Fee Application.

Mr. Busby also testified as to the Tenth Fee Application:

> Q. Mr. Busby, can you turn to page 6 of M-11, which was marked for identification purposes, where it says the words grand totals? And can you let me know when you see that, please?
>
> A. I see it.
>
> Q. Okay. Do you know what those numbers next to grand totals represent?
>
> A. I know what they're supposed to represent.
>
> Q. Okay, can you turn to --
>
> A. But the numbers -- the numbers are not --
>
> Q. I'm sorry --
>
> A. -- correct. The numbers are not correct.
>
> MR. BIELLI: Your Honor --
>
> THE COURT: Just ask him to read the numbers because that's all we want. What do the numbers say?
>
> BY MR. BIELLI:
>
> Q. What do the numbers say?
>
> A. Well, there's a grand total for the preceding nine applications of what was requested, and that total number is $3,148,230.22.
>
> Q. Can you turn to page 10 of the same document under conclusion?
>
> A. Yes. I'm there.

14

Q. Does it say in that paragraph that the applicant requests a final award of $2,956,387.50 in compensation and of $191,842.72 in reimbursement of actual and necessary expenses, less payment received in the amount of $491,978.42 for a total award balance of 2,656,251.80 for the period of April 30, 2009, through May 31, 2012? Did I read that correctly?

A. You did read that correctly.

Q. Okay. If you go to the next page, there's a form of order. Correct? Proposed form of order?

A. Yes.

Q. To your knowledge, was that order entered?

A. No, to my knowledge it was not entered.

Q. Does the third paragraph of that order say that the sum of $2,956,387.50 is allowed as a final and total award of reasonable compensation? And 191,842.72 is allowed as a final award for actual necessary expenses for the professional services rendered on behalf of the debtors for the final period? Did I read that correctly?

A. You did read it correctly.

Q. Thank you. Did Montgomery McCracken prepare that form of order?

A. I believe so.

Q. And submitted it to the Court?

A. I believe so.

APPX001109-1111 (Tr. 113:20 -115:17). MMWR requested a total award balance of $2,656,251.80 for the period of April 30, 2009, through May 31, 2012.  Mr. Busby then confirmed that paragraph 1 of the stipulation stated as follows:

15

> Q. Does paragraph 1 say that MMWR will agree to reduce its total fee and cost claims against THP from 2.6 million for all pre bankruptcy, bankruptcy, and postbankruptcy work for THP to the total sum of 2.325 million?  Did I read that correctly?
>
> A. You read that, but I have to explain it.

APPX001112 (Tr. 116:13-18). This shows that MMWR's total award balance of $2,656,251.80 was the $2.6 million referenced in paragraph 1 of the Stipulation, *i.e.*, the $2.6 million in the Stipulation references all work performed by MMWR related to THP – including all pre-bankruptcy, bankruptcy, and post-bankruptcy work – whether the work was paid for or remained unpaid.

Mr. Busby further testified that the $2.6 million was a negotiated number:

> THE WITNESS: September to October was when we negotiated the account receivable.
>
> THE COURT: Okay.
>
> THE WITNESS: And we agreed on it as 2.6 million.  And then we negotiated during that time and the entire time on how much of a discount would be made to the 2.6 million.
>
> And that continued --
>
> THE COURT: So that was when -- you negotiated the numbers during what time period? September and October.
>
> THE WITNESS: First we did that to arrive at the $2.6 million number, and then we negotiated a discount.

APPX001114 (Tr. 118:15-25). The referenced discount was to $2.325 million, which THP tendered to MMWR:

16

MR. BIELLI: Let me be clear. And I apologize. I misspoke. I'm talking about Exhibit M-10, which is Tab 63, the last page, which is marked 5 of 5 that we were just on when I asked Mr. Busby if TH Properties paid 2.325 million, and his answer was in the negative.

BY MR. BIELLI:

Q. Are you there, Mr. Busby?

A. I am here.

Q. Okay. Did Montgomery McCracken receive checks or any other payments from TH Properties that total $2,325,000? Yes or no?

A. Are you instructing me only to answer yes or no?

THE COURT: Yes or no.

THE WITNESS: We received payments and a check.

BY MR. BIELLI:

Q. Totaling $2.325 million?

A. Yes.

APPX00118-001119 (Tr. 122:13 -123:4).

Mr. La Flamme, general counsel to H&K and a signatory to the Stipulation, testified that the $2.35 million stated in the Stipulation was inclusive of all payments made to MMWR:

THE WITNESS: My understanding of the first paragraph is that all monies that were paid to or received by Montgomery McCracken, whether pre-bankruptcy, post-bankruptcy, during the bankruptcy that were a payment to Montgomery McCracken, was to be credited against the $2,325,000, which is to be paid to them. It says upon

> payment -- where was it? Let me find it here. Yeah, that
> was it, a total payment of $2,325,000 to Montgomery
> McCracken, including all monies paid or received by them
> throughout the bankruptcy, prepetition, post-petition.

APPX001222 (Tr. 72:12-21). Mr. La Flamme confirmed that again when testifying

about the Stipulation:

> THE WITNESS: When I looked at this, I understood total
> fees and costs claims to mean anything or any work that
> Montgomery McCracken had done, that is what they were
> seeking payment for. And that was totaled out to be for all
> work they did on this and what was two million six and
> change -- two million three, I'm sorry -- two million three,
> was their total fee and cost claim for all work they had
> done on this.

> THE COURT: On this, when?

> MR. BIELLI: On this at the stipulation, what was an
> agreed-to number, that was all monies they were to be
> paid, including pre-bankruptcy, post-bankruptcy --

> THE COURT: So your understanding was that 2.3
> included the monies that were paid prepetition?

> THE WITNESS: Yes, ma'am.

> THE COURT: That was your understanding --

> THE WITNESS: Yes, ma'am.

> THE COURT: -- and that was negotiated? That was
> negotiated?

> THE WITNESS: As part of the two million three, that all
> monies were part of that --

> THE COURT: My question is, is that what you believe
> that you negotiated?

18

> THE WITNESS: That's what I believe was negotiated; yes, ma'am.
>
> THE COURT: All right.

APPX001230 (Tr. 80:1-25). Likewise, he testified that the $2.6 million figure in paragraph 1 of the Stipulation referred to all fees, paid and unpaid:

> THE WITNESS: I understood, Your Honor, it included all fees for which they were seeking compensation for.
>
> THE COURT: Yes or no: Paid or -- and unpaid?
>
> The same thing you wanted, Mr. Bielli, I'm going to enforce with your witness, because you didn't want Mr. Busby going off and telling me all sorts of things.
>
> What was your understanding of the word "claims"? Did it include paid and unpaid fees?
>
> THE WITNESS: It would have included everything, including paid and unpaid, Your Honor.
>
> THE COURT: Okay. So, yes.

APPX001236 (Tr. 86:13-24).

So, it was understood that the $2.325 million paid by THP encompassed MMWR's claims for all work done before, during, and after bankruptcy. The $2.6 million was a negotiated number for those claims, which were then reduced to $2.325 million as part of the settlement Stipulation. And, MMWR confirmed it received total payments of $2.325 million. Accordingly, the evidence presented at the Bankruptcy Court trial contradicts MMWR's position and supports Appellant's position.

## C.     THE BANKRUPTCY COURT ERRORED BY AMENDING ITS ORDER TO AWARD MMWR 6% INTEREST AND NOT EXCLUDE THE TRIAL DELAY PERIOD

Following the Bankruptcy Court's post-trial Order (APPX000056) and accompanying Memorandum (APPX000032-55), MMWR filed its Motion for Reconsideration (APPX000278), requesting that the Bankruptcy Court revise its Order to provide interest rate terms more favorable to MMWR.

The Bankruptcy Court awarded MMWR interest on the Outstanding Stipulation Debt. *See* APPX000032-55. The Bankruptcy Court pointed out that the awarding of prejudgment interest is committed to the court's discretion and given in response to consideration of fairness, . . . and denied when it would be inequitable. *See Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 982 (3d Cir. 1984) (concluding that there was no difference between application of federal law and Pennsylvania law with respect to the award of pre-judgment interest, and holding that in the absence of legislative directive, the awarding of prejudgment interest is committed to the trial court's discretion, and "'given in response to considerations of fairness, … denied when its exaction would be inequitable.'") (*citing Bd. of Commr's of Jackson County, Kansas v. U.S.*, 308 U.S. 343 (1939)).

The Bankruptcy Court went on to state that MMWR's Motion to Enforce sought "simple annual interest at a rate of 6%. It did not provide any basis for that rate or state the date or dates from which interest shall be calculated." *See*

APPX000054. Thus, it was within the Bankruptcy Court's discretion to decline to apply that rate.

The Bankruptcy Court found that the "Stipulation provides that MMWR was to be paid $2.325 million through the payment "at closing" of varying amounts of sale proceeds from units in certain of the Reorganized Debtors' developed or planned communities." *See Stipulation at ¶¶3, 5-7*. Thus, the Bankruptcy Court found that the "amount MMWR was to be paid varied by the community in which the sale occurred." *See* APPX000054. There is no manifest errors of law or fact in these findings.

The Bankruptcy Court further found "that MMWR is entitled to payment of simple interest on the Outstanding Stipulation Debt, calculated by reference to the effective federal funds rate [] on the closing date [] for each of the said units for which MMWR was to be paid a portion of the sale proceeds under the terms of the Stipulation, but was not." *See* APPX000054. As noted by the Bankruptcy Court, the Trial was delayed through no fault of the Reorganized Debtors from April 28, 2020 (the "Trial Delay Period") and "the position the Reorganized Debtors took was supportable" but ultimately meritorious. The Reorganized Debtors were also successful in the two (2) appeals filed by MMWR. Likewise, the Bankruptcy Court properly exercised its discretion when it excluded the Trial Delay Period.

MMWR failed to establish in its Motion to Enforce its entitlement to pre-judgment interest at a 6% rate, a flaw it persuaded the Bankruptcy Court to remedy through its Motion for Reconsideration. However, MMWR's failure to support its Motion is not the standard to be applied. Here, the Bankruptcy Court did not make an error MMWR did, and MMWR should not be permitted to rehash its Motion to Enforce because it was unhappy with the Bankruptcy Court's ruling.

Likewise, MMWR's argument that the Bankruptcy Court errored in computation of pre-judgment interest in unpersuasive. The Stipulation between MMWR and the Reorganized Debtors was silent on a default interest rate. *See* APPX000515-525. Equally, MMWR's reliance on 41 P.S. § 202 is misplaced. It is within the Bankruptcy Court's discretion to awarded pre-judgment interest, as well as the rate, and determine how the interest should be applied. Following MMWR's method would be inequitable under the circumstances of this case.

## **CONCLUSION**

The Bankruptcy Court improperly determined that the evidence presented at trial supported MMWR's interpretation of the Stipulation, and improperly amended its post-trial order to address interest calculations. The Bankruptcy Court abused its discretion in those rulings, which should be overturned by this Court.

Respectfully submitted,

**BIELLI & KLAUDER, LLC**

Date: January 31, 2025

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire
Angela L. Mastrangelo, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Phone: (215) 642-8271
tbielli@bk-legal.com
mastrangelo@bk-legal.com

*Counsel to the Appellant / Reorganized Debtors*

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that the foregoing brief complies with Federal Rule of

Bankruptcy Procedure 8015(7)(A) since it is a principal brief shorter than thirty

(30) pages in length.


Date: January 31, 2025

BIELLI & KLAUDER, LLC

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire
Angela L. Mastrangelo, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Phone: (215) 642-8271
tbielli@bk-legal.com
mastrangelo@bk-legal.com

*Counsel to the Appellant / Reorganized Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of January 2025, I caused a true and correct copy of the foregoing *Brief of Appellant* to be served upon all persons receiving electronic notices in this case, and upon electronic mail and/or electronic filing upon the following:

Richard G. Placey, Esquire
Leonard A. Busby, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 S. Broad Street, 24th Floor
Philadelphia, PA 19109
rplacey@mmwr.com
lbusby@mmwr.com

Albert A. Ciardi III, Esquire
Ciardi Ciardi & Astin
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
aciardi@ciardilaw.com
Counsel for H&K Group, Inc.

Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

**BIELLI & KLAUDER, LLC**

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire
Angela L. Mastrangelo, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Phone: (215) 642-8271
tbielli@bk-legal.com
mastrangelo@bk-legal.com

*Counsel to the Appellant / Reorganized Debtors*